**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MISSOURI**

| | |
|---|---|
| PTI UNION, LLC; PTI ROYSTON, LLC; PHARMA TECH SERVICES, LLC; PTI MISSOURI, LLC; and PTI GEORGIA, LLC<br><br>Plaintiffs,<br><br>v.<br><br>GREAT NORTHERN INSURANCE COMPANY and FEDERAL INSURANCE COMPANY<br><br>Defendants. | Case No. 4:26-cv-1531<br><br>**Jury Trial Demanded** |

## COMPLAINT

Plaintiffs PTI Union, LLC; PTI Royston, LLC; Pharma Tech Services, LLC; PTI Missouri, LLC; and PTI Georgia, LLC, (collectively referred to herein as "Plaintiffs"), by and through their undersigned counsel, and for their Complaint against Great Northern Insurance Company ("Great Northern") and Federal Insurance Company ("Federal") (together the "Defendant Insurers"), allege as follows:

## NATURE OF ACTION

1. This is a civil action for declaratory judgment and breach of contract against Defendants Great Northern and Federal and breach of fiduciary duties against Great Northern, brought by Plaintiffs for money damages and other appropriate relief arising out of the Defendant Insurers' breach of a series of commercial general liability insurance policies referred to herein (the "Policies") that provide defense and indemnity insurance coverage for multiple lawsuits filed against Plaintiffs alleging bodily injury arising from talc products packaged by Plaintiffs on behalf of third parties (the "Lawsuits").

2. Plaintiffs timely reported the Lawsuits to Defendant Insurers.

3. Defendant Great Northern accepted the defense of the Lawsuits under a reservation of rights and has been participating in the partial defense of Plaintiffs. In addition, Great Northern has contributed to several settlements of individual Lawsuits.

4. Defendant Federal denied Plaintiffs' request for defense and indemnity coverage, relying on an "asbestos exclusion" in its policy. This exclusion has no application to those cases that allege both an injury from exposure to talc as well as injury from talc contaminated with asbestos. Federal is aware that such cases exist and that underlying cases alleging only injury from asbestos may later be amended to include allegations of injury from non-asbestos-containing talc. Moreover, this exclusion does not wholly eliminate the potential for coverage, thereby triggering a duty to defend, since it would only apply if there was actual asbestos contamination of the talc specified by Plaintiffs' customers, used by Plaintiffs, and/or any resulting bodily injury is established as a matter of fact. Until such fact is proven by way of a judicial determination, admission or jury verdict, Federal owes Plaintiffs a defense obligation with respect to the Lawsuits.

5. The failure of the Defendant Insurers to fully and fairly defend and indemnify Plaintiffs against the Lawsuits is a breach of their contractual duties causing damage to Plaintiffs. Great Northern's intentional or reckless disregard of Plaintiffs' interests constitutes a breach of its fiduciary duties.

## THE PARTIES

6. Plaintiff PTI Union, LLC is organized under the laws of the state of North Carolina and has its principal place of business in Chesterfield, Missouri. PTI Union

purchased certain assets of non-party Pharma-Tech Industries, Inc. ("PTII") in 2008, including the rights to insurance proceeds from PTII.

7. The sole member of PTI Union, LLC is Broadview Investments, LLC. The sole members of Broadview Investments, LLC are the following four trusts: (a) the Revocable Living Trust of Edward T. Noland, Jr.; (b) the Edward T. Noland, Jr. Irrevocable Gifting Trust; (c) the Laura Noland Tarrasch Revocable Trust; and (d) the Tarrasch Family Trust. Tee Noland is the sole trustee of the Revocable Living Trust of Edward T. Noland, Jr.; Tee Noland is a resident of the state of Georgia. William Parker Willimon is the sole trustee of the Edward T. Noland, Jr. Irrevocable Gifting Trust; William Parker Willimon is a resident of Athens, Georgia. Laura Tarrasch and Michal Tarrasch are the trustees of the Laura Noland Tarrasch Revocable Trust; Laura Tarrasch and Michal Tarrasch are residents of Collier County, Florida. Michael Tarrasch is the sole trustee of the Tarrasch Family Trust; Michael Tarrasch is a resident of Collier County, Florida.

8. Plaintiff PTI Royston, LLC has its principal place of business in Royston, Georgia. Broadview Investments, LLC is the sole member of PTI Royston, LLC.

9. Plaintiff Pharma Tech Services, LLC has its principal place of business in Royston, Georgia. Broadview Investments, LLC is the sole member of Pharma Tech Services, LLC.

10. Plaintiff PTI Missouri, LLC has its principal place of business in Cumming, Georgia. Plaintiff PTI Union, LLC is the sole member of PTI Missouri, LLC.

11. Plaintiff PTI Georgia, LLC has its principal place of business in Royston, Georgia. PTI Royston, LLC is the sole member of Plaintiff PTI Georgia, LLC.

12. Defendant Great Northern is incorporated in the state of Indiana and has its principal place of business in Whitehouse Station, New Jersey.

13. Defendant Federal is incorporated in the state of Indiana and has its principal place of business in Whitehouse Station, New Jersey.

## JURISDICTION AND VENUE

14. This Court has personal jurisdiction over the parties pursuant to 28 U.S.C. §§ 1332 and 2201 et seq. Each of the Defendant Insurers issued the insurance Policies at issue here in Missouri to an insured corporation with its headquarters in Missouri. On information and belief, each of the Defendant Insurers transacts business in Missouri and/or contracted to insure businesses or property located within Missouri which makes them subject to the jurisdiction of this Court.

15. The amount in controversy, exclusive of interest and costs, exceeds $75,000.

16. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because Defendants are corporations that transact business in Missouri and, as more fully discussed below, the transactions and occurrences set forth herein, including the issuance of the Policies, the location of witnesses, and the location of documents, are within the Eastern District of Missouri.

## FACTUAL BACKGROUND

17. One or more of the Plaintiffs are in the business of packaging powders for third-party manufacturers, which at times included talc, for customers including Johnson & Johnson. At all relevant times, the talc the third-party producers qualified and designated for use by Plaintiffs was warranted as tested and certified as non-detect for asbestos.

18. Beginning in approximately 2017, Lawsuits started to be filed by multiple plaintiffs across the country against Plaintiffs and others, alleging that the third-party producers and packagers such as Plaintiffs had distributed material containing asbestos and that this asbestos had led to bodily injuries suffered by those exposed to the products.

19. Certain of the Lawsuits allege liability as a result of injuries arising from or otherwise sustained both from exposure to asbestos and also from talc. Defendant Insurers therefore had notice of the potential for coverage unrelated to asbestos exposure in those lawsuits. Further, providing notice of the potential for coverage based on the facts readily known to the insurers in the asbestos-only Lawsuits.

**A. <u>The Policies</u>**

20. Great Northern issued Commercial Coverage Policy No. 3534-89-69 CCG to PTII for the policy period of June 8, 1996 to June 8, 1997 (the "1996-97 Great Northern Policy"). Great Northern renewed this policy for the June 8, 1997 to June 8, 1998 policy period (the "1997-98 Great Northern Policy"). Both the 1996-97 Great Northern Policy and the 1997-98 Great Northern Policy (collectively the "Great Northern Policies") include General Liability insurance forms and endorsements providing general liability coverage on an occurrence basis in accordance with the operative Great Northern Policies' terms and conditions. Copies of the Great Northern policies are attached as Exhibits A and B, respectively.

21. The Great Northern Policies were issued and delivered to "Pharma Tech Industries, Inc." at its headquarters in Union, Missouri.

22. The Insuring Agreement in the Great Northern policies states that Great Northern "will pay damages the insured becomes legally obligated to pay by reason of

liability imposed by law … for bodily injury or property damage to which this insurance applies caused by an occurrence ….”

23. The Great Northern Policies further state that “[t]his insurance applies to bodily injury or property damage which occurs during the policy period ….”

24. As to Great Northern’s defense obligation, the Policies state that Great Northern “will have the right and duty to defend any insured against a suit seeking damages for bodily injury, [or] property damage….” This defense obligation does not erode available limits and Great Northern’s “right and duty to defend end when we have used up the applicable Limit Of Insurance in the payment of judgements or settlements under bodily injury [or] property damage….”

25. The Products/Completed Operations per occurrence limit is $1 million and the aggregate limit under each Great Northern Policy is $1 million. Great Northern has admitted that the total limits available to Plaintiffs is $2 million, $1 million for each year of occurrence coverage.

26. Federal issued Commercial Umbrella policy 98 7973-03-72 CAS to Pharma Tech Industries, Inc., affording coverage for the policy period April 1, 1997 to April 1, 1998 (the “Federal Policy”). A copy of the Federal policy is attached as Exhibit C.

27. The Federal Policy was issued and delivered to named insured “Pharma Tech Industries, Inc.” at its headquarters in Union, Missouri.

28. The Federal Policy is both a follow form excess/umbrella policy and follows form to the 1997-98 Great Northern Policy. The Federal Policy includes coverage subject to product liability limits of $1 million per occurrence and $1 million in the aggregate. As the 1997-98 Great Northern Policy is not exhausted and no single claim has exceeded that

primary policy's per occurrence limit, the Federal Policy has not yet been implicated to defend or indemnify Plaintiffs in any Lawsuits.

29. The underlying Lawsuits generally allege exposure to and bodily injury resulting from talc over a long period of time, including during the policy periods of the Great Northern and Federal policies. The Lawsuits allege injury from asbestos contained in the talc and from the talc itself.

30. The majority of the Lawsuits allege that PTI Union, LLC, PTI Royston, LLC, Pharma Tech Services, LLC, PTI Missouri, LLC, and PTI Georgia, LLC are successors in interest to, alter egos of and/or doing business as PTII and thus liable for damages that occurred during the Defendant Insurers' policy periods.

**B. Insurer Defendants' Responses to the Lawsuits**

31. Upon notice of the Lawsuits, tenders were made on behalf of Plaintiffs, and Great Northern has agreed to provide a defense subject to a reservation of rights.

32. Under both primary policies, Great Northern has provided a partial defense to Pharma-Tech Industries, Inc. and, through PTII, the other Plaintiffs. Great Northern has also contributed to the settlement of several of the underlying Lawsuits on behalf of Plaintiffs, but its limits of liability have yet to be exhausted.

33. Despite partially funding Plaintiffs' defense, Great Northern has taken actions which are detrimental to Plaintiffs. Great Northern, without Plaintiffs' consent, disclosed to underlying claimants the total amount of insurance coverage available to Plaintiffs, thus prejudicing Plaintiffs in their efforts to defend and resolve underlying claims.

34. Great Northern produced, without permission or authorization by Plaintiffs, privileged and confidential documents provided to Great Northern by Plaintiffs regarding Plaintiffs' corporate history, litigation strategies, case valuations and other documents that prejudiced Plaintiffs in their efforts to resolve underlying claims. Great Northern failed to respond to Plaintiffs' requests for information on how this disclosure was made, instead seeking to blame Plaintiffs for its actions. Also, as a result of these unauthorized disclosures, as well as unreasonable delays in approval of local counsel, Plaintiffs were forced to enter into a very unfavorable settlement that Great Northern alleges resulted in the partial erosion of Plaintiffs' available limits of insurance.

35. Great Northern has indiscriminately and vexatiously reduced the amounts of defense costs paid to Plaintiffs' counsel, delayed approvals of local counsel that have prejudiced Plaintiffs' defense of the Lawsuits, and delayed payments to counsel and vendors to the point that vendors and others assisting in the defense have refused and/or threatened to discontinue working with Plaintiffs and their counsel, prejudicing Plaintiffs' defense of the claims and Lawsuits. Great Northern has charged the law firms defending Plaintiffs 5% of billed amounts to review their bill without any basis for this fee in the Policies.

36. Great Northern, as part of its participation and control of Plaintiffs' defense of the claims, refused Plaintiffs' request to retain bankruptcy counsel to address the bankruptcy of a certain third-party talc supplier who Plaintiffs could have asserted contractual indemnification to Plaintiffs in the Lawsuits, limiting and vexatiously interfering with Plaintiffs' ability to remove pending matters to a more favorable forum, further prejudicing Plaintiffs' defense of the claims and Lawsuits.

37. Federal has wrongfully and vexatiously denied all of Plaintiffs' claims for coverage arising from the Lawsuits and refused to provide Plaintiffs with a defense against claims, improperly relying on an "asbestos exclusion" in the Federal policy. Federal has never acknowledged its coverage obligations based on the potential for coverage for those claims alleging injury from causes other than asbestos, or alleged injury from asbestos as well as other causes.

38. Federal's asbestos exclusion does not eliminate the potential for coverage by complaints that can be amended to add claims not subject to the exclusion, or Federal's duty to defend other claims of liability or loss unrelated to asbestos exposure, or when asbestos claims are only alleged and not proven as a matter of fact.

**FIRST CAUSE OF ACTION**
**(Declaratory Judgment Against Great Northern)**

39. Plaintiffs incorporate by reference the allegations set forth in Paragraphs 1 through 38 above.

40. The terms and conditions of the Great Northern Policies obligate Great Northern to pay for: (a) the defense costs incurred by Plaintiffs until the aggregate indemnity limits of their Policies are exhausted; and (b) the final judgment or settlement costs paid by Plaintiffs until the aggregate indemnity limits of their Policies are exhausted.

41. Plaintiffs have fully satisfied all relevant terms and conditions precedent to coverage under the Great Northern Policies, or such terms and conditions have been waived by Great Northern or no longer apply.

42. An actual and justiciable controversy exists between Plaintiffs and Great Northern regarding the obligations of Great Northern under the Great Northern Policies.

43. Plaintiffs respectfully seek a judicial declaration of Great Northern's obligations created by the Policies, including that each Plaintiffs alleged to be a successors in interest to, alter egos of, and/or doing business as PTII is owed a full defense in the Lawsuits.

44. Plaintiffs respectfully seek a judicial declaration that the remaining aggregate limits of liability of the Great Northern policies is $1,830,000

45. A declaratory judgment will terminate the controversy between Plaintiffs and Great Northern regarding the insurer's obligation to afford liability coverage and pay Plaintiffs' losses and expenses relating to the defense and indemnity of the Lawsuits.

**SECOND CAUSE OF ACTION**
**(Declaratory Judgment Against Federal)**

46. Plaintiffs incorporate by reference the allegations set forth in Paragraphs 1 through 45 above.

47. The terms and conditions of the Federal Policy obligates Federal to pay for: (a) the defense costs incurred by Plaintiffs when the aggregate limits of the underlying polic(ies) are exhausted; and (b) the final judgment or settlement costs paid by Plaintiffs when the aggregate limits of the underlying Great Northern polic(ies) are exhausted.

48. Plaintiffs have fully satisfied all relevant terms and conditions precedent to coverage under the Federal Policy, or such terms and conditions have been waived by Federal or no longer apply due to legal or equitable principles, including estoppel and laches.

49. An actual and justiciable controversy exists between Plaintiffs and Federal regarding the obligations of Federal under the Policies. Plaintiffs contend that the Lawsuits alleging injury from asbestos are not excluded from coverage where the potential for

coverage exists for complaints that could be amended to include injuries from other alleged causes, and the Lawsuits alleging both injury from asbestos and injury from other causes are also owed a defense based on the potential for coverage under the Federal policy. Federal has denied coverage for all of the Lawsuits, including those that include alleged non-asbestos injury.

50. Plaintiffs seek a declaration that Federal's asbestos exclusion does not eliminate Federal's duty to defend when asbestos claims are only alleged and not proven as a matter of fact.

51. A declaratory judgment will terminate the controversy between Plaintiffs and Federal regarding Federal's obligation to pay Plaintiffs' loss relating to the defense and indemnity of the Lawsuits.

52. As a foreseeable consequence of Federal's conduct, Plaintiffs have been required to retain counsel to prosecute this action and are therefore entitled to attorneys' fees and costs of litigation in an amount to be determined at trial.

**THIRD CAUSE OF ACTION**
**(Breach of Contract Against Great Northern)**

53. Plaintiffs incorporate by reference the allegations set forth in Paragraphs 1 through 52 above.

54. The Great Northern Policies are valid and binding contracts between Plaintiffs and Great Northern.

55. Great Northern's Policies require it to defend Plaintiffs in Lawsuits alleging injury during the policy period and indemnify Plaintiffs for any covered Loss that Plaintiffs incurred arising out of the Lawsuits.

56. Great Northern breached its contractual obligation to Plaintiffs by denying coverage, unreasonably delaying payment of defense costs, unreasonably delaying the selection of counsel to the prejudice of Plaintiffs, refusing to pay the costs of bankruptcy counsel when needed, charged a 5% fee for the review of defense invoices, and for failing to defend and indemnify Plaintiffs for their outstanding and unreimbursed damages incurred or to be incurred in connection with the Lawsuits.

57. Great Northern's actions are in contravention of the terms and obligations it agreed to under the Great Northern Policies.

58. Plaintiffs have fully satisfied all relevant terms and conditions precedent to coverage under the Great Northern Policies, or such terms and conditions have been waived by Great Northern, or it is otherwise estopped, by its breach of the contract and/or other actions taken and no longer apply.

59. As a direct and proximate result of Great Northern's breach of the insurance contract, Plaintiffs have sustained damages in an amount to be determined at trial.

60. As a foreseeable consequence of Great Northern's conduct, Plaintiffs have been required to retain counsel to prosecute this action and are therefore entitled to attorneys' fees and costs of litigation in an amount to be determined at trial.

## FOURTH CAUSE OF ACTION
**(Breach/Anticipatory Breach of Contract Against Federal)**

61. Plaintiffs incorporate by reference the allegations set forth in Paragraphs 1 through 60 above.

62. The Federal Policy is a valid and binding contract between Plaintiffs and Federal.

63. The Federal Policy requires that Federal defend Plaintiffs in Lawsuits alleging injury during the policy period and to indemnify any Loss that Plaintiffs incurred arising out of the Lawsuits.

64. Federal breached its contractual obligation to Plaintiffs by denying coverage for all of the Lawsuits.

65. Federal's actions are in contravention of the terms of the Policy.

66. Plaintiffs have fully satisfied all relevant terms and conditions precedent to coverage under the Federal Policy, or such terms and conditions have been waived by Federal by their breach of the contract and/or other actions and no longer apply.

67. As a direct and proximate result of the Federal's breach of contract, Plaintiffs have sustained damages in an amount to be determined at trial.

68. As a foreseeable consequence of Federal's conduct, Plaintiffs have been required to retain counsel to prosecute this action and are therefore entitled to attorneys' fees and costs of litigation in an amount to be determined at trial.

**FIFTH CAUSE OF ACTION**
**(Breach of Fiduciary Duties Against Great Northern)**

69. Plaintiffs incorporate by reference the allegations set forth in Paragraphs 1 through 68 above.

70. Great Northern's duty to defend the Lawsuits and concomitant right to control settlement and litigation under the Great Northern Policies created a fiduciary relationship between Great Northern and Plaintiffs, whereby Plaintiffs occupied a superior position of trust obligating Great Northern to prioritize Plaintiffs' interests over its own.

71. As Plaintiffs' fiduciary placed in a superior position of trust, Great Northern was obligated, among other things, to: (i) act with the utmost good faith, fidelity and loyalty

in the interest of Plaintiffs; (ii) make full disclosure to Plaintiffs of all material facts and strictly avoid misrepresentation; (iii) exercise good faith in control of the defense and litigation of the underlying Lawsuits; (iv) act with due care; and (v) avoid placing its own financial interests ahead of Plaintiffs' interests.

72. By intentionally delaying or wrongfully denying payment of Plaintiffs' defense costs, delaying retention of local counsel, denying requests to hire counsel to address bankruptcy claims, and by recklessly producing to plaintiffs suing Plaintiffs' privileged documents that Plaintiffs entrusted to Great Northern, and by other actions expected to be revealed during discovery, Great Northern has acted in breach of its fiduciary duties to Plaintiffs.

73. As a direct and proximate result of the Great Northern's breach of its fiduciary responsibilities, Plaintiffs have sustained damages in an amount to be determined at trial.

74. As a foreseeable consequence of Great Northern's conduct, Plaintiffs have been required to retain counsel to prosecute this action and are therefore entitled to attorneys' fees and costs of litigation in an amount to be determined at trial.

**SIXTH CAUSE OF ACTION**
**(Unreasonable Refusal to Pay Pursuant to Mo. Rev. Stat. § 375.420**
**Against Great Northern)**

75. Plaintiffs incorporate by reference the allegations set forth in Paragraphs 1 through 74 above.

76. Great Northern has refused through its actions and inaction, without reasonable cause or excuse, to pay covered defense fees for the Lawsuits on behalf of Plaintiffs, to the prejudice of Plaintiffs.

77. As a direct and proximate result of Great Northern's refusal to contribute policy proceeds and pay Plaintiffs' defense costs, without reasonable cause or justification, Plaintiffs have sustained substantial losses.

78. These losses include, but are not limited to, attorney's fees in this action, and related actions between the parties, to vindicate Plaintiffs' rights and enforce Great Northern's obligations under the Great Northern Policies, the exact amount of which is yet to be determined.

79. Plaintiffs are entitled to recover all damages proximately caused or contributed to by Great Northern's refusal to honor its obligations and defend, including exemplary damages and statutory penalties, and all other consequential damages, the amount of which will be proven at or before the time of trial.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs request judgment on their First Cause of Action, including:

(a) An Order declaring Great Northern's remaining limits of liability under the Great Northern Policies are $1,830,000;

(b) An Order declaring that each Plaintiffs alleged to be a successor in interest to, alter egos of, and/or doing business as PTII in the Lawsuits is owed a full defense in the Lawsuits; and

(c) All other relief that this Court deems just and proper.

WHEREFORE, Plaintiffs request judgment on their Second Cause of Action, and that the Court declares that:

(a) An Order declaring with respect to Lawsuits alleging injury from asbestos, Lawsuits alleging injury from non-asbestos causes and Lawsuits alleging both, Federal owes a defense under the Federal Policy; and

(b) An Order declaring Lawsuits alleging injury from asbestos are not excluded from coverage where the potential for coverage exists for Lawsuits that could be amended to include injuries from other alleged causes,

(c) An Order declaring that Federal's asbestos exclusion does not eliminate Federal's duty to defend when asbestos claims are only alleged and not proven as a matter of fact.

(d) All other relief that this Court deems just and proper.

WHEREFORE, Plaintiffs request judgment on their Third Cause of Action, and that the Court award:

(a) Plaintiffs' actual and compensatory damages as proven at trial;

(b) Pre-judgment and post-judgment interest on the Court's award of damages;

(c) Plaintiffs' costs and attorneys' fees incurred herein, either as foreseeable damages for Great Northern's breach or as otherwise provided by applicable law; and

(d) All other relief that this Court deems just and proper.

WHEREFORE, Plaintiffs request judgment on their Fourth Cause of Action, and that the Court award:

(a) Plaintiffs' actual and compensatory damages as proven at trial;

(b) Pre-judgment and post-judgment interest on the Court's award of damages;

(c) Plaintiffs' costs and attorneys' fees incurred herein, either as foreseeable damages for Federal's breach or as otherwise provided by applicable law; and

(d) All other relief that this Court deems just and proper.

WHEREFORE, Plaintiffs request judgment on their Fifth Cause of Action, and that the Court award:

(a) Plaintiffs' actual and compensatory damages as proven at trial;

(b) Plaintiffs' statutory damages as proven at trial;

(c) Punitive damages as proven at trial;

(d) Pre-judgment and post-judgment interest on the Court's award of damages;

(e) Plaintiffs' costs and attorneys' fees incurred herein, either as foreseeable damages for Defendant Insurers' breach or as otherwise provided by applicable law; and

(f) All other relief that this Court deems just and proper.

WHEREFORE, Plaintiffs request judgment on their Sixth Cause of Action, and that the Court award:

(a) Plaintiffs' actual and compensatory damages as proven at trial;

(b) Plaintiffs' statutory damages as proven at trial;

(c) Punitive damages as proven at trial;

(d) Pre-judgment and post-judgment interest on the Court's award of damages;

(e) Plaintiffs' costs and attorneys' fees incurred herein, either as foreseeable damages for Defendant Insurers' breach or as otherwise provided by applicable law; and

(f) All other relief that this Court deems just and proper.

DATED: September 25, 2026

Respectfully submitted,

*/s/ Joseph M. Morris*
**ROBERTS PERRYMAN P.C.**
Joseph M. Morris, MO #63108MO
1034 S. Brentwood Blvd., Ste. 2100,
St. Louis, Missouri 63117
(314) 421-1850 – Phone
(314) 421-4346 – Fax
jmorris@robertsperryman.com

*Attorney for Plaintiffs*

**JURY DEMAND**

Plaintiffs demand a trial by jury on all issues so triable.